Tyrone R. YOUNG, Appellant,

v.

UNITED STATES of America, Appellee.

Guy D. HARRIS, Appellant,

v.

UNITED STATES of America, Appellee.

Roy L. JOHNSON, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 21756, 21757, 21857.

United States Court of Appeals, District of Columbia Circuit.

Argued March 3, 1970.

Decided June 26, 1970.

David S. Urey and Edward F. McKie, Jr., Washington, D. C. (both appointed by this Court), for appellants.

Mr. Roger E. Zuckerman, Asst. U. S. Atty., with whom Mr. David G. Bress, U. S. Atty., at the time the brief was filed, was on the brief, for appellee. Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., also entered appearances for appellee. Mr. Daniel J. Givelber, Asst. U. S. Atty., also entered an appearance for appellee in No. 21,857.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal from appellants' conviction for robbery and assault with a dangerous weapon, and, in the case of appellant Young, an additional conviction for carrying a deadly weapon. All charges stem from the robbery of the Mathews Drug Store on February 27, 1967. The appeal was argued to another panel, which did not complete action on the case.* It was reassigned to the present panel.

Appellants contend that the car in which they were riding was illegally stopped and searched by the police and that evidence obtained as a result thereof was improperly introduced at trial. For the reasons set out below, we think that this contention is without merit. Appellants also object to the Government's handling of its eyewitness identification testimony on the grounds that the stationhouse identification testified to at trial was unnecessarily suggestive and conducted during a period of unnecessary delay. While we find no merit in their other contentions we conclude that appellants' suggestiveness argument raises a substantial issue of due process, and accordingly we remand for further proceedings in the District Court.

### I. *Facts*

The Mathews Drug Store was robbed by three men, one of whom carried a sawed-off shotgun, shortly before 11:00 a.m. At around noon of the same day officers Kerick and Rattay of the Metropolitan Police Special Operations Division observed a car occupied by five men parked in front of the American Security and Trust Bank. Their suspicions were aroused when this car made a U-turn and followed a delivery truck whose driver had just left the bank. Officers Kerick and Rattay decided to follow along, but lost track of the car some six blocks later. Further investigation revealed that the delivery truck was overdue. They radioed in a description of the automobile and suggested that it be stopped so that its occupants could be questioned. Shortly thereafter they again sighted the car. Other police cars had been called for assistance. An officer from the car that arrived first assisted Kerick and Rattay in bringing the suspicious vehicle to a stop. Officer Kerick approached the car from the rear, and as he stood along the side of the automobile he noticed what he believed to be the barrel of a shotgun protruding out from under the driver's seat. The occupants of the car, now four in number, were told to get out and a sawed-off shotgun was retrieved from under the seat. The car's occupants, the three appellants and one other named Lawrence Bell, were placed under arrest for carrying a shotgun without the permit required by the Federal Firearms Act.[1] The car was stopped about 12:50 p.m., and appellants were taken to the Ninth Precinct stationhouse at about 1:00 p.m.

Shortly after the arrest of appellants Officer Kerick determined that they fitted the lookout he had received that morning after the robbery of the Mathews Drug Store. Around 2:00 p.m. Mr. Mathews was brought to the stationhouse to see if he could identify any of the occupants of the automobile. On the way to the lineup he was told that

---

* Judge Burger's elevation and Judge Prettyman's illness caused the court to order reargument.

1. Subsequently the Supreme Court held the Firearms Act unconstitutional, Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

408

the suspects he would view "had a shotgun." The lineup consisted of six men: the four occupants of the car and two police officers. The police officers were dressed in coats and ties, whereas the suspects were dressed in turtlenecks and similar casual attire. The shotgun taken from the car was on view in the lineup room. Appellant Harris was dressed in an overcoat similar to one worn by the robber, and he testified that the coat was not his and that he wore it against his will. Mr. Mathews identified appellant Harris as the gunman, appellant Young as the other robber, and appellant Johnson as the lookout. Appellants were presented before a commissioner the following morning. At trial Mr. Mathews testified on direct concerning his stationhouse identification.

## II. *Illegal Arrest Claim*

Appellants contend that the shotgun and pistol taken from the car were the fruits of an illegal arrest and therefore should have been excluded from evidence at trial. We think no sound objection can be based on the action of the policemen in stopping the suspicious-acting car and detaining the car and its occupants for brief questioning. In Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), the Supreme Court suggested that, in such situations, probable cause is not required to justify a momentary detention when the police have no intention to detain a suspect beyond the requirements of routine interrogation. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) the Court went further and held that a police officer may make not only a stop but also a protective frisk where he "observes unusual conduct which leads him reasonably to conclude in the light of his experience that criminal activity may be afoot and that the person with whom he is dealing may be armed and presently dangerous. * * *" *Id.* at 30, 88 S.Ct. at 1884. The power to stop a person for brief questioning was not discussed expressly but was an implied and necessary premise of the decision. *See Id.* at 32–33, 88 S.Ct. 1868. Harlan, J. concurring. A greater invasion of the interests generally protected by the Fourth Amendment, and notably the interest in being let alone, is wrought by a frisk than by requiring someone to stop long enough to be asked a few questions aimed at clearing up suspicious circumstances. Obviously the officer is not required to meet a greater burden in justifying such a stop than in justifying the subsequent frisk.

A stop is to be distinguished from an arrest requiring probable cause. In *Terry* the Court drew a distinction between traditional "arrests" and "seizures of the person which do not eventuate in a trip to the station house and prosecution for crime." An inter-related standard was put forward in the concurring opinion in Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967), which noted that the key question is "whether the constraints applied were protective of the police and bystanders, or were custodial." 128 U.S.App.D.C. at 364, 389 F.2d at 315. Under this test or a test which focuses on the officer's intention to detain for only a brief time, it is apparent that the stop of the car in which appellants were riding was not an arrest requiring probable cause.

It remains to be determined whether, though lacking probable cause to believe appellants had committed a crime and should therefore be arrested, the police nonetheless had reasonable cause for the stop of the car and its occupants. Appellants argue that if we approve this stop we will confer absolute discretion on the policeman to stop any car on the pretext of requesting to see the driver's license and registration. We are not fairly confronted with any such issue. Stops as well as arrests must satisfy the Fourth Amendment requirement of reasonable cause commensurate with the extent of the official intrusion. If the defendant challenges evidence as the fruit of an illegal sei-

zure, the government must come forward with "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, *supra*, 392 U.S. at 21, 88 S.Ct. at 1879. That showing has been made here. The close observation of the bank by the occupants of the car, their hasty U-turn to follow the delivery truck, and the report that the delivery truck was overdue, obviously contituted a situation which warranted further investigation into the possibility that a robbery was underway, and the conduct of that inquiry with the caution appropriate to a crime of violence.

Officer Kerick requested aid in making a "suspicious spot check." This phrase is apparently used by the local police to identify those stops in which the officer believes there is special need for protective measures.[2] The means used to satisfy this need for caution, the summoning of additional cars and police to assist in the stop, seems reasonably related to the object of preventing both flight and injury to police and bystanders. The reasonableness of protective measures was further supported by the fact that all but one of the officers present at the stop were on patrol in unmarked cars and wearing casual clothes. Officer Rattay testified that "generally when we wear old clothes we make it a habit to surround the car to give us more protection for ourselves."

### III.  *Illegal Search Claim*

There is no merit in appellants' contention that the shotgun taken from the car in which they were arrested was inadmissible as evidence because it was the fruit of an illegal search.

Given the reasonableness of the stop of the car and occupants for inquiry into the possibility of their implication in an attempted robbery, there was no search involved when Officer Kerick, from outside the car, saw what appeared to be a shotgun barrel protruding from under the car seat. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968). The officer's removal of a possible weapon from the immediate control of the appellants was a reasonable measure, fully justified by his need to protect himself, his fellow officers and passersby. The weapon would clearly have been subject to seizure if the officer were making an arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The underlying considerations of safety and reasonableness also apply when the officer is engaged in a reasonable inquiry on a suspicion of violence. A police officer need not defer such protective measures to the point of peril. All the law requires is that he have reasonable basis for believing that his safety or the safety of others requires a search or seizure. Terry v. Ohio, *supra*; *cf.* Brinegar v. United States, 338 U.S. 160, 183, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (opinion of Justice Jackson). Officer Kerick stationed himself behind the car in order to obviate any violence on the part of the occupants whose suspicious conduct raised the possibility that they had been planning a crime of violence. When he saw what appeared to be a shotgun, he acted reasonably in undertaking to remove a weapon that could be used against the officers. His actions did not exceed in scope what would be dictated by the purpose to disarm, and were justified by the applicable *Terry* standards.

### IV.  *Claim that Mallory Rule Requires Exclusion of Lineup Testimony*

Appellants raise a claim under the *Mallory* rule[3] saying that, conceding probable cause to arrest them at 1 p.m. for a violation of the Firearms Act,

---

2. Officer Kerick was asked if this phrase carried a message that "this stop involves any degrees or precaution of firmness in making and enforcing the stop?" He answered, "It wouldn't in regard to enforc-

ing or making a stop. It would regard more caution."

3. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

Rule 5(a) of the Federal Rules of Criminal Procedure required that they be brought promptly before a magistrate "without unnecessary delay," and prohibited their being held at the stationhouse to see whether they could be identified as the malefactors who robbed the Mathews Drugstore.

■ It is unnecessary for us to decide whether the lineup fell within a permissible period of custody-without-presentment predicated on the Firearms Act charge alone. Appellants misapprehend the holding and reach of *Adams*[4] on which they rely. In *Adams* we applied the exclusionary rule to a lineup which had been held during a detention "continued beyond the limits of rule 5(a) for investigatory purposes vis-a-vis other crimes" for which "there was no probable cause to detain [appellants] under arrest." We said that dentention beyond such a period was equivalent in operative effect to a new arrest which could be supported only on a showing of probable cause. And we held that detention without probable cause could not be justified on the ground that police wished to arrange a lineup. In the case at bar, however, the evidence of record establishes probable cause to detain appellants for the Mathews Drugstore robbery, over and above the Firearms Act violation for which they were arrested.[5]

Officer Kerick's determination that appellants fitted the lookout for the Mathews Drugstore robbery justified not only continuance of detention on the basis of that offense, but also the holding of a lineup for viewing by witnesses to that robbery—in view of the fact that this lineup took place prior to the decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The case comes within the ambit of Williams & Coleman v. United States, 136 U.S.App.D.C. 158, 419 F.2d 740 (1969) (en banc), where we held that as to a lineup held prior to the creation of the non-retroactive right to counsel in *Wade*, Rule 5(a) and *Mallory* did not prohibit, as "unnecessary delay," the holding of a lineup prior to presentment to the commissioner. Accordingly, we find no error in the District Court's refusal to exclude the lineup testimony on *Mallory* grounds.

## V. *Suggestive Lineup Contention*

At trial the Government elicited Mathews' testimony concerning his identification of appellants at the lineup conducted approximately one hour after their arrest for carrying a concealed weapon.

■ In support of their claim of suggestiveness, appellants point to a number of aspects of the lineup at which they were identified by Mathews. Conspicuous and distinct in the lineup photograph are the two men with coats and ties (the police officers) whose garb contrasts with the sports clothes worn by the other four (the suspects). The sawed-off shotgun seized at the time of appellants' arrest, and similar to the one used in the robbery, was on view in the lineup room. Although the police knew

---

4. Adams, Stuckey and Roots v. United States, 130 U.S.App.D.C. 203, 399 F.2d 574 (1968).

5. Shortly after appellants' arrest and the recovery of the shotgun and pistol from the car, Officer Kerick determined that appellants fit the lookout which had been broadcast for the Mathews Drugstore robbery. The three appellants fit the lookout description of the three perpetrators of the robbery—a description which specified age, height, weight, skin coloring and dress. Moreover, the lookout indicated that the robbers had been armed with a single barreled sawed-off shotgun and a nickel-plated pistol, and this description fits the weapons recovered from the car.

Had the police encountered these men on the street they would have had probable cause to arrest them for the robbery of the Mathews Drugstore. On the street they could also have decided to proceed more deliberately, by first stopping them long enough to check out their identification and explanation, etc. See Part II, *supra*. Because there would have been probable cause to arrest for the robbery, *Adams* is not applicable.

that Mathews might make multiple identifications (he identified three), all four suspects were placed in a single line of six. Appellant Harris wore an overcoat similar to one worn by the gunman, a coat he claims was not his, and with the unusual similarity of being too large for him just as the gunman's coat was outsized.

These are indeed troublesome aspects of the lineup, defects which impaired the reliability of the lineup as an identification technique. Moreover although the lineup occurred prior to the *Wade* decision, the case was tried subsequent to the issuance of *Wade* and its companion case, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The prosecution was thus on notice of the legal hazard of introduction of direct testimony concerning an identification unattended by counsel, *see* Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). It was alerted to the problem that prejudice from a suggestive identification is intensified when it is used in the prosecution's direct case.

Appellants have raised a substantial issue as to whether this lineup was so unnecessarily suggestive and conducive to irreparable mistaken identification as to result in a denial of due process. The District Court in denying appellants' *Stovall* motions did not provide the findings on which that ruling was based. Were this issue raised on collateral attack pursuant to 28 U.S.C. § 2255, findings of fact would be required. There is no reason for less when at trial a motion to suppress is made on *Stovall* grounds and such findings can be made freshly.

We think that the issue is too important to leave for appellate court reconstruction. What is needed is a careful analysis by the trial judge of the nature and degree of suggestiveness, the extent to which that suggestiveness was avoidable, and the prejudice resulting from the suggestiveness. Moreover, although Mathews testified that the shotgun was in the lineup room when he made his identification, it appears that the trial judge was under the impression that Mathews did not see the weapon until after he had made his identification and thus did not focus on this suggestive influence. Additionally, we are unable to tell whether the trial judge disbelieved Harris's claim that he was forced to wear clothing which was not his or whether he considered such a procedure not to be fatally suggestive. A remand is required for elucidation of the issues surrounding this identification. Accordingly, we remand this case to the trial judge so that he may review his *Stovall* ruling, reopen the suppression hearing if he thinks that the interests of justice so require, and prepare findings of fact and conclusions of law to support whatever decision he reaches.

So ordered.