**UNITED STATES of America**

v.

**Raymond MORRIS, Appellant.**

**No. 23513.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1970.

Decided Nov. 20, 1970.

MacKinnon, Circuit Judge, dissented and filed opinion.

Mr. Addison M. Bowman, III (appointed by this court) for appellant.

Mr. Warren R. King, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT, McGOWAN and MacKINNON, Circuit Judges.

PER CURIAM:

This appeal from a conviction for carrying a pistol without a license (22 D.C.Code § 3204) raises only the question of the admissibility of the pistol as against a pretrial motion to suppress. That motion was the subject of an evidentiary hearing, at the close of which the court ruled that the action taken by the police was proper under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968)—a case which the court, in its words, interpreted as holding that "the police had the authority to question the man involved and to pat him down for their own protection." Our difficulty is not with this interpretation, but rather with an ambiguity in the testimony as to whether this is precisely what the police did.

The police officer who found the gun on appellant's person testified that he had been advised by a special officer at the Trailways Bus Station that the latter had been told that a man in a restaurant across the street had a gun. The special officer's informant was a hanger-on about the bus station. With this information, the officer went inside the restaurant.[1] His testimony as to what happened thereafter is as follows (after relating a false start in which he first brought out a man whom the special officer said was the wrong man):

> " * * * So I then went back in and brought Mr. Morris out and I told him

---

1. He was accompanied across the street by the special officer and the latter's informant. Both of these persons remained outside the restaurant, but were present when the gun was found.

that we had reason to believe he was carrying a gun, and I searched him. At this time he told me he did have a gun, blurted it out, and I removed from his right coat pocket of his long grey overcoat a .32 calibre H and R pistol with three live rounds in the same."

If, as the court's characterization of *Terry* implies, there are limitations upon the scope of the search which can be made incident to a *Terry* detention, then it is impossible to say from this testimony whether they were exceeded, and whether the gun was discovered in the process of an unlimited and full-scale search of appellant's person, or as a consequence of a protective pat down. Whatever the nature of the search, it appears from this testimony to have preceded the admission made by appellant. It may, of course, have been that the initiation of a pat down evoked the admission. What we cannot say for certain from this meagre record is whether the search exceeded the limitations which the court rightly regarded as inseparable from the *Terry* holding.

It is argued by the Government that there was probable cause to arrest in any event, and that, accordingly, appellant was legally subject to full-scale search upon his apprehension.[2] But the officer did not testify that he arrested appellant on the basis of probable cause. His account, instead, comports with the theory of a temporary investigative detention validated by *Terry*. This is borne out by the fact that the court which heard the testimony did not ground its ruling on a search incident to arrest on probable cause but upon the *Terry* rationale.

*Terry* clothed the police with important new authority, and we think it desirable that its initial exercises not be

cloaked in ambiguity or confusion. The testimony of an officer purporting to act under *Terry* should be elicited clearly and with a conscious purpose to relate fact to theory. Because that was not accomplished in this instance in a manner which enables us to be certain of exactly what happened, we remand the case for a supplementary evidentiary inquiry and for a new ruling by the court after such clarification has been provided.

It is so ordered.

MacKINNON, Circuit Judge (dissenting):

It is *my opinion that the officer had* probable cause to detain appellant for purposes of interrogation and search (not just a pat down) based on the affirmative allegation asserted on personal knowledge and direct personal observation by a citizen who was previously known to the officer and who supported his accusation by standing by while appellant was being detained, searched and arrested by the officer. *See* Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Young v. United States, 140 U.S.App.D.C. 333, 435 F.2d 405 (1970). And there was nothing stale about the charge levied at appellant. Such factual situation does not bring the case within Aguilar v. Texas, 378 U.S. 108, 113, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and other cases involving "unidentified informers" or hearsay information.

To me the officer's conduct throughout was entirely reasonable. If officers cannot act instantaneously under such positive claims by a citizen who stands by then they are powerless to protect the public. I would affirm.

---

**2.** Appellant has resisted this argument on the ground that the reliability of the informant has not been adequately established, citing Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723

(1964). We do not reach the point since it was not ruled on by the District Court, and we are remanding the case in any event for a new ruling on the legality of the search on the basis of a supplementary inquiry into the facts.