**Manuel de J. GOMEZ, Plaintiff,**

v.

**Jerry WILSON, Chief of Police,**

and

**Walter R. Bishop, Captain, Third Precinct, Metropolitan Police Department, Defendants.**

**Civ. A. No. 2909-67.**

United States District Court, District of Columbia.

Feb. 12, 1971.

88

Nancy Pyeatt, Washington, D. C., and Ralph J. Temple, Washington, D. C., of counsel, for plaintiff.

C. Francis Murphy, Acting Corp. Counsel, John A. Earnest and Frederic

Lee Ruck, Asst. Corp. Counsel, Washington, D. C., for defendants.

## OPINION

CURRAN, Chief Judge.

This action seeking injunctive and declaratory relief was originally before this Court on December 21, 1967. At that time, the plaintiff's complaint was dismissed for failure to state a case or controversy, and a finding was made that plaintiff had an adequate remedy at law, as well as that plaintiff failed to demonstrate irreparable injury.

After remand[1] by the United States Court of Appeals for the District of Columbia Circuit, the case was again before this Court on February 20, 1970. The defendants' motion to dismiss on the ground that the case was moot was granted. Finally, on June 23, 1970,[2] the United States Court of Appeals for the District of Columbia remanded this case to this Court for the third time in order that a full evidentiary hearing could be held. On October 12, 1970, a hearing was held, and it was agreed at that time that all the evidence submitted to the Court would be by way of stipulation. Likewise, the Court allowed respective counsel forty-five days within which to submit said evidence and to supply supporting briefs.

When the controversy arose in November, 1967, the original complaint asserted that the plaintiff had been stopped and questioned by the Police while walking late at night in the Dupont Circle section of the city. At that time, the plaintiff was the subject of a Police Vagrancy Observation and was warned that further observations would result in his arrest. Subsequent to filing the original complaint, the plaintiff was again confronted by the Police and again was the subject of a Vagrancy Observation, but this time the confrontation was far more intense.

The plaintiff asks this Court to (1) declare his right to walk or be in any public place in the District of Columbia while sober and well-behaved and enjoin interference with that right; (2) order that any "vagrancy observation" records be expunged; and (3) declare the District of Columbia vagrancy statute unconstitutional.

The complaint sounds in the nature of a class action in that it asks for declaratory and injunctive relief for all those similarly situated. Since the ruling of the Court is directed only to the procedures used by the Police in vagrancy observations and not the statute itself, a suit in the nature of a class action is not proper, as the Court will only grant relief to those whose cases are before the Court. Since the plaintiff is the only person bringing this suit, then the Court will only pass on the facts of his case.

In an earlier opinion regarding this case, the Court of Appeals stated the procedure to be followed at the hearing:

"(T)he district court should first consider whether, assuming the District of Columbia vagrancy statute is constitutional, the vagrancy observations practices are nevertheless unconstitutional. If they are not, the court should next consider whether or not it has jurisdiction to determine the constitutionality of the (statute) itself. If it does have jurisdiction, the court should make a constitutional determination. If at any point the court decides that appellant has a valid constitutional claim, it should determine the necessity and availability of injunctive relief".

Before following the groundwork as laid out by the Court of Appeals, the Court thinks it would be helpful to trace the workings of the Police procedure regarding vagrancy observations.

After December 23, 1968, the procedures and forms used by the Police Department changed. On that date, the

1. Gomez v. Layton, 129 U.S.App.D.C. 289, 394 F.2d 764 (1968).

2. Gomez v. Wilson, 430 F.2d 495 (D.C. Cir. 1970).

Court of Appeals decided Ricks v. District of Columbia, 134 U.S.App.D.C. 201, 414 F.2d 1097 (1968). This case held Sections (1), (3) and (8) of the general vagrancy statute,[3] hereinafter called the vagrancy statute, unconstitutionally vague.

Prior to the *Ricks* decision, and during the time of plaintiff's confrontations with the Police, the following were the procedures used by the Police in vagrancy cases. By Memorandum Order No. 23, issued in 1954 by the Deputy Chief of Police, the men on the force were directed to observe certain types of vagrants by questioning them and recording their answers. A varying number of observations, directly related to an approximate time period, were necessary to make an arrest, e. g., persons frequenting suspected gambling establishments were to be observed at least three times over a period of a month or less and then arrested under subsection (5) of the statute. Each precinct had its own vagrancy form and when an observation was recorded, no reference was made on the forms to any particular subsection of the statute.

Subsequent to *Ricks*, supra, Chief of Police John B. Layton issued a Memorandum on February 17, 1969, directing cessation of vagrancy observations and arrests under subsections (1), (3) and (8) but not the remaining sections. The Memorandum concludes as follows:

> *"The arrest policies announced here do not preclude an officer from observing persons engaged in suspicious activity in public space and from approaching those persons and making inquiry.* Such action by an officer in some instances, based on the person's answers, may lead to probable cause to arrest for a particular crime. Such action may also provide a valuable lead in the apprehension of the person responsible for a crime which later comes to the attention of the Department. *In those instances in which the person refuses to identify himself or does not give a reasonable explanation of his conduct, the officer should make an accurate and detailed record of the person's description and other significant characteristics, the clothing worn, and the explanations furnished."* (Emphasis added).

It has been stipulated by the parties that since the above-mentioned Memorandum was issued, no other written directive or guideline with respect to subsections (4), (5), (6), (7) and (9) of the vagrancy statute has been made by the Police Department.

Presently vagrancy observations result from "spot check" observations forms.[4] Spot checking was originated in 1964 as a means of reducing the rising traffic fatalities. In January, 1970, the Second District, for example, expanded the system to allow for the "stopping and checking of suspicious persons on foot". Again in June, 1970, the Second District replaced its form with one issued by the Department for use in all districts. The officers in this district were directed to use new form, P.D. 725, to record,

> " * * * all Traffic Checks of suspicious vehicles operating in this District and for all suspicious pedestrians found loitering about area. This form shall also be used for regular traffic spot checks".

As was pointed out above, the only guideline or directive regarding the enforcement of the statute was that issued on February 17, 1969. In essence then, the statute itself is the guideline. The Court draws attention to the partial depositions of six policemen submitted by the plaintiff and stipulated to by the defendant. Only one of the officers had a thorough knowledge of the subsections

---

3. 22 D.C.C. § 3302.

4. Form P.D. 725 information consists of the location of the observation, date, time, officer, the name of the person observed, address, age, nickname, description and employer. The rest of the form concerns automobiles. Forms turned in are filed and cross-indexed by name, nickname, stop location and (for motorists) tag number.

of the statute. The remaining five had little or no knowledge of the statute's contents. Three policemen, one having "observed" the plaintiff in May, 1967, were not familiar with any departmental guidelines concerning the enforcement of the statute.

One officer, in describing the circumstances under which he would stop and question people, said,

"Anyone that acts in a suspicious manner or draws my attention to them for whatever incident it might be * * * well, just really a person of suspicious nature or seems to be— draws my attention to them of a suspicious nature, especially in the areas of where large amounts of housebreakings occur."

All of this testimony would seem to indicate insufficient guidelines defining the activity necessary for an officer to conclude that a vagrancy violation has occurred.

The Court further notes that persons arrested under the vagrancy statute are booked as vagrants without any reference to any particular subsection of the statute. The arrest form, P.D. 163, does not provide for the citation of any statute or portion thereof. It is only when the Assistant Corporation Counsel seeks this arrest form that a section or subsection of the general vagrancy statute is noted.[5]

The Annual Report of the Metropolitan Police Department shows 263 vagrancy arrests during the fiscal year 1968, 138 vagrancy arrests in fiscal year 1969, and 99 vagrancy arrests in fiscal year 1970, with the majority of the arrests occurring in the Thirteenth Precinct.

The issue presented to the Court is whether the vagrancy observation practices of the Police violate the Fourth Amendment's prohibition against unreasonable searches and seizures.

In recent years, many decisions have been written in this area, but for our purposes the case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is of great importance. That case involved the constitutionality of "stop and frisk" encounters, whereas this case can properly be called a "stop and question" situation. The Supreme Court in Terry v. Ohio set out standards to determine what act or actions constitute a Fourth Amendment seizure:

"It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." 392 U.S. 1 at 16, 88 S.Ct. 1868 at 1877.

"Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." 392 U.S. 1 at 19, n. 16, 88 S.Ct. 1868 at 1879, n. 16.

 It can fairly be said that when a policeman stops and questions a person on the street, that person to a degree is restrained. The officer's uniform, badge, and all the other indicia of his position and power as a law enforcement authority are at that moment thrust upon the person. The individual will at least stop and listen to the questions being asked, and in just about all cases, he will feel compelled to do so. Therefore, the Court finds that when an individual is stopped and questioned by the police, pursuant to a vagrancy observation, that person has been seized within the scope of the Fourth Amendment.

The Court, however, can only act if the seizure is an unreasonable one, and once again Terry v. Ohio, supra, furnishes some standards regarding the reasonableness of seizures in police-citizen street encounters.

5. The Court notes that the officers recording a vagrancy observation are asked to point out the nature of the suspicious activity that prompted the confrontation.

*Terry* directs us to make an objective evaluation of the facts of each case and determine:

1) whether the facts warranted the intrusion of the individual's Fourth Amendment rights, and

2) whether the scope of the intrusion was reasonably related to the circumstances justifying the interference in the first place.[6]

The Court also feels that to justify a temporary detention, under the general vagrancy statute, the officer must be able to point to specific and articulate facts which, taken together with the rational inferences from the facts, reasonably warrant the intrusion[7]; also, in following with *Terry*, a mere hunch of criminal activity will not justify the officer in making detention for investigatory purposes.

The plaintiff, in this case, is an alien with permanent resident status, living in Washington, D. C. The undisputed testimony of the plaintiff is that on May 10, 1967, at approximately 1:15 A.M., while walking in the vicinity of 20th Street and Massachusetts Avenue, Northwest, the plaintiff was stopped by two policemen in an unmarked car. After asking the plaintiff for his identification and to explain his whereabouts, the officers filled out a vagrancy observation form and told plaintiff that they would arrest him for vagrancy if they saw him there again.

Plaintiff immediately contacted a lawyer, who informed him that he had every right to walk the streets so long as he was not committing a crime.

This suit was then filed in November, 1967, and on December 13, 1967, the plaintiff had another encounter with the Police. This time the plaintiff was confronted by six or seven police officers. He was in the same geographic locality and it was around 11 P.M. After being stopped by one officer and asked to explain his activity that evening, the plaintiff was then confronted by the other policemen. The plaintiff gives this account:

"By that time there were about 6 or 7 policemen around me, asking me questions at the same time and telling me that they seeing (sic) me walking for about 3½ hours, at the most it had been .2½ hours. I remember asking me (sic) if I was homosexual, another said (sic) if I use marihuana, one said to me 'take off your jacket and roll up your sleeves'. He was looking on my arm, I recall one who was trying to make me admit, I was looking for men."

After the plaintiff asked to speak to a lawyer, the questioning ceased but the Police filled out another vagrancy observation form and again admonished him that further observations would lead to an arrest.

The Court finds that in this case the facts did not warrant such an intrusion on the plaintiff's Fourth Amendment rights and that the scope of the intrusion was not reasonably related to the circumstances justifying the interference in the first place.

The Court reaches this conclusion based upon the defendant's uncontradicted statement that he was sober and well-behaved and that he was merely walking around the city; the undisputed recitation by plaintiff of his second encounter with the Police shows questionable behavior on the part of the Police, especially noting the unfounded and unreasonable questions regarding homosexuality and the use of marijuana and the ordering of plaintiff to remove his coat and roll up his sleeves; and finally the deposition of one of the policemen who confronted the plaintiff in May, 1967, indicates that the officer could not pinpoint or connect his observation of the plaintiff to any specific criminal or suspicious activity. The officer in his deposition, taken two years after the original

6. *Loyd v. Douglas*, 313 F.Supp. 1364 (1970).

7. Terry v. Ohio, supra; Anderson v. Superior Court for County of Los Angeles, 9 Cal.App.3d 851, 88 Cal.Rptr. 617.

confrontation, remembered filling out an observation form on the plaintiff but stated that the suspicious activity of the plaintiff concerned possible window smashing or larceny from an auto. Obviously, these two activities have little or nothing to do with the vagrancy statute.

Consequently, the Court holds that since the officer could not point to specific and articulate facts which, taken together with the rational inferences from the facts, reasonably warranted the intrusion, then the vagrancy observations of this plaintiff are without merit and that any and all such Police forms, indexes, and cross-indexes connected with the defendant and this case be expunged. The Court also declares the plaintiff's right to walk or be in any public place in the District of Columbia while sober and well-behaved and enjoins the Police Department from interfering with that right while he is conducting himself according to law.

Since the Court has found that, in this case, the vagrancy observation practices of the Police were unconstitutional, it need not pass upon the constitutionality of the vagrancy statute itself [8].

Counsel for the plaintiff shall present an order in compliance with this opinion.

---

8. See Directive of the Court of Appeals, supra pp. 89–90.