Charles D. LONG, Appellant,

v.

**DISTRICT OF COLUMBIA et al.**

No. 71–1072.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 14, 1972.

Decided Sept. 6, 1972.

As Amended on Denial of Rehearing
Dec. 4, 1972.

Mr. Ralph J. Temple, Washington, D. C., with whom Messrs. William A. Bradford, Jr., and James H. Heller, Washington, D. C., were on the brief, for appellant. Messrs. John J. Sexton and Patrick J. Mahoney, Washington, D. C., also entered appearances for appellant.

Mr. David P. Sutton, Asst. Corp. Counsel for the District of Columbia with whom Messrs. C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before WRIGHT, TAMM and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

On 25 February 1969 appellant was allegedly shopping in a jewelry store in Washington, D. C. For some unspecified reason, the proprietor of the jewelry store called the police and reported that a "suspicious" man was in the store. Several police officers promptly came to the store and, upon being directed to appellant, demanded that he identify himself and answer a few brief questions. In order to assure that appellant was not carrying a weapon, the police conducted a superficial search or "frisk" of appellant's outer clothing and body. No arrest was made and the entire incident lasted nine minutes.

Appellant's attorney subsequently wrote the Chief of the Metropolitan Police Department and requested assurance that appellant would not be subject to another such incident. In response, the Chief of Police advised appellant's counsel that he could not give such an assurance, and that the "frisk" conducted on appellant was in accord with the Constitution and procedural guidelines established by the Police Department.

Appellant thereafter brought a class action on behalf of himself and all others similarly situated against the District of Columbia, the Chief of Police and various other police officers. Appellant sought to enjoin the police from stopping and frisking individuals in any manner not in accord with their constitutional rights, alleging the actions complained of here to be typical and to be violative of constitutional rights. Appellant also requested that a three-judge court be convened in order to declare a provision of the D.C.Code and a federal statute unconstitutional. Finally, based on the actions of the Metropolitan Police, appellant sought $15,000 in damages for false arrest from the District of Columbia.

In aid of his action, appellant served upon defendants a set of interrogatories seeking detailed information concerning the incident at the jewelry store, as well as various unspecified searches, stops, frisks, and interrogations conducted upon other individuals. The Police Department answered the interrogatories concerning the jewelry store incident but declined to answer interrogatories about other police actions. The Department asserted that information about other incidents was not relevant to the legality of the action taken against appellant.

The trial court denied appellant's request for the convention of a three-judge court to consider the constitutionality of the two statutes and dismissed the action seeking to enjoin the Police Department's stop-and-frisk policies. The court further found that appellant's individual claim for money damages could not reasonably exceed $10,000 and that this issue should, therefore, be heard in the District of Columbia Court of General Sessions. Finally, the District Court held that the Police Depart-

ment need not answer appellant's interrogatories seeking information about stops and frisks other than the one in which appellant was involved.

## I. *The Convention of a Three-Judge Court*

Appellant sought the convention of a three-judge court in order to enjoin the operation of two statutory provisions. The first statute permits the questioning for a period "not to exceed three hours" of "any person *arrested* in the District of Columbia." [1] The second statute provides that voluntary confessions made by a person under arrest or custodial detention shall not be inadmissible solely because of a delay in bringing the person before a committing magistrate. [2] It is, of course, true that if a situation existed in which these statutes might be enjoined as being unconstitutional, it would be necessary to convene a three-judge court to hear the issue. It is the opinion of this court, however, that the facts presented here simply do not call into question the constitutionality of these two statutes.

The two statutes were not the basis of the "stop and frisk" performed on the appellant. It is clear that in acting as they did, the police were attempting to utilize the "stop and frisk" procedure upheld in Terry v. Ohio. [3] In *Terry* an individual was searched for weapons for reasons which did not in a strict sense constitute probable cause. The Supreme Court held such a search was permissible when a police officer was reasonably warranted in the belief that his safety or that of others in the area might be endangered. [4] This court has subsequently held that such a confrontation and pat-down is neither an arrest nor a custodial detention, even though the police officer interrogates the suspect in

1. D.C.Code § 4–140a (Supp. IV, 1971) (emphasis added).

2. 18 U.S.C. § 3501(a)–(c) (1970).

3. 392 U.S. 1, 88 S.Ct. 1868, 5 L.Ed.2d 372 (1968).

4. *Id.*, at 27, 88 S.Ct. 1868.

the course of such an investigative confrontation.[5]

In some situations it may be difficult to distinguish between a *Terry* "stop and frisk" and the situations covered by the two statutes called into question. It is conceivable that a stop and frisk could extend for so long that it would be virtually indistinguishable from an arrest. In such a situation it might be unclear whether the police were acting pursuant to *Terry* or to the statute which permits the detention and questioning of a suspect for three hours following arrest. Fortunately, this is not such a difficult case. Appellant was clearly not placed "under arrest" by the police officers. The first statute under attack deals only with questioning following an "arrest." Since no arrest occurred, it cannot be contended that the statute has any applicability to this case.

The second statute, which permits the use of confessions given prior to arraignment, was clearly not the basis of any of the police's actions. Here no confession was offered or taken by the police; the words of the statute have not been employed to offer a confession given by appellant. It is, therefore, difficult to conceive of how the second statute could be involved in the facts of this case.

■ From a simple reading of the two statutes attacked by appellant, it seems obvious that neither of them had anything to do with police action in the jewelry store. There is, therefore, no factual predicate giving rise to a case or controversy under either of the statutes. A three-judge court may only act, of course, when a justiciable case or controversy is shown to exist. Absent a justiciable case or controversy, a single judge is required to dismiss the action for lack of jurisdiction.[6]

■ Appellant's attack on the two statutes is not saved by his allegation that he represents a class that has been the subject of police action based upon the statutes. As we have seen, appellant is not a member of the class of people who have been subject to action based upon the statutes. A person simply cannot represent a class of which he is not a member. For these reasons there was no jurisdictional basis for the convention of a three-judge District Court.

## II. *Appellant's Rights to an Evidentiary Hearing to Enjoin Future Searches*

In addition to his challenge to the two statutes, appellant claims that the action of the police in stopping and frisking him did not comply with the standards established in Terry v. Ohio.[7] An injunction, therefore, was sought against the police to prevent them from detaining, frisking, searching or interrogating him in the future. We believe that the District Court correctly dismissed this plea for injunctive relief and denied appellant's request for an evidentiary hearing on the matter.

The Metropolitan Police Department has established guidelines for the use of stop-and-frisk procedures.[8] It is, therefore, possible to examine and consider these guidelines to determine if the Police Department has an official policy of engaging in unconstitutional frisks. If the Department's guidelines are lawful, it cannot be said on the basis of the facts presented that there exists an established policy of making unlawful frisks.

The Department's memorandum treats in detail the three fundamental elements of an investigatory confrontation: the

5. *See* Au Yi Lau v. United States Immigration and Naturalization Service, 144 U.S.App.D.C. 147, 445 F.2d 217 (No. 23,339, 19 March 1971); United States v. Morris, 142 U.S.App.D.C. 196, 440 F.2d 224 (1970); Young v. United States, 140 U.S.App.D.C. 333, 435 F.2d 405, 408 (1970).

6. Lion Mfg. Corp. v. Kennedy, 117 U.S. App.D.C. 367, 374–375, 330 F.2d 833, 840–841 (1964).

7. 392 U.S. 1, 88 S.Ct. 1868, 5 L.Ed.2d 372 (1968).

8. Joint Appendix, at 13–21.

authority to stop, the authority to interrogate, and the right to frisk. The guidelines emphasize that the authority to frisk is distinct from the authority to stop and interrogate, and that a police officer does not necessarily have a right to frisk a suspect simply because the situation permits him to stop and interrogate.

The guidelines provide that in order to stop an individual an officer must have a "reasonable suspicion" that the person is committing, has committed, or is about to commit any felony or misdemeanor prosecutable by the U.S. Attorney. They go on to describe the nature of "reasonable suspicion" and to give examples of action that may give rise to such suspicion. The procedures stress that stops should not be used to harass citizens and there are a number of limitations designed to curb the use of investigatory stops.

The police memorandum's discussion of the authority to question states that interrogations should be brief and should be carried out in the vicinity of the stop. Questioning should be limited to inquiries regarding a person's name, address, and an explanation of his presence and actions. If the questioning becomes extended or begins to focus on an individual relative to a particular crime, the officer is required to advise the suspect of his right to remain silent and to have counsel present.

An officer's authority to frisk is made dependent upon the reasonable belief that the suspect constitutes a danger to the public or to the investigating officer. Substantial limitations are placed on the permissible extent of any search carried out and explicit instructions are given to prevent excessive encroachments upon an individual's privacy. The Department's memorandum concludes with a series of hypothetical examples designed to illustrate the limits of a policeman's right to stop and frisk.

The guidelines describe conduct that is clearly within the limits imposed by the Supreme Court in its landmark decision in Terry v. Ohio,[9] and more recently in Adams v. Williams.[10] In *Terry* the Court recognized a limited authority on the part of a police officer to stop and frisk a suspect. An officer was allowed (1) to stop a suspect if he had a "reasonable suspicion" that a crime has been or is about to be committed, (2) briefly to interrogate a suspect in the area of the stop concerning his identity and reasons for his actions, and (3) to make a superficial search or "frisk" of a suspect upon a reasonable belief that his own or the public's safety is endangered. *Adams* clarified the initial outlines of *Terry* by holding that the facts giving rise to the reasonable suspicion necessary to stop, interrogate and frisk a suspect could be provided by someone other than the police officer under certain limited circumstances. The jewelry store personnel provided the reasonable suspicion here. Presumably information supplied by a reputable businessman could provide as firm a basis for police action as that supplied by the usual police "previously reliable informant."

We do not feel it is necessary to go into a detailed comparison of the Supreme Court's holdings and the Department's guidelines. Indeed, in many respects the Court's opinions and the Department's stated procedures cannot be directly compared. The guidelines are intended to cover a wide range of possible fact situations and necessarily are broader in scope than the Court's decisions which are limited to a particular case. This is to be expected when one is attempting to add flesh in the form of generally applicable rules to the latent skeleton discerned in a Supreme Court opinion.

9. 392 U.S. 1, 88 S.Ct. 1868, 5 L.Ed.2d 372 (1972). The parameters of *Terry* were reiterated and refined in the companion decision of Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

10. 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612 (U.S. 13 June 1972).

■ The Department's stop-and-frisk guidelines are clearly a sincere effort to describe the bounds of permissible police activity. If they possess a fault, it is that they are too thorough and include too much nonessential information for them to be easily referred to by a policeman confronted with a stop-and-frisk situation. The existing guidelines are not, however, so unclear or confusing as to be unconstitutional. Undoubtedly, as the Department gains experience in formulating and implementing stop-and-frisk procedures, their guidelines will be revised and refined to make them more efficacious and to assure that the public's safety is protected without undue impositions on the citizenry's privacy. Such efforts are commendable and are to be encouraged.

■■ It is, of course, possible that a policy of making unlawful frisks could exist in fact even though the stated official policy is within the bounds of the Constitution. If police officers customarily carry out unlawful stop and frisks, it could not be said that the police policy regarding investigatory confrontations was lawful. If a party could prove such an unlawful course of conduct, he would be entitled to an injunction against its continuance.

In the instant situation, however, there have been no factual allegations which, if proven, would show the existence of a policy of making unlawful frisks. The allegation here is of a single isolated incident. Even assuming any illegality, one could not conclude from this solitary occurrence that frisks are ordinarily carried out in similar situations.

■ Considerations of policy dictate that the courts act cautiously in granting injunctions against police action.[11] A court should not bind the hands of the police on the mere possibility that certain conduct may be repeated. To do so would unnecessarily involve the courts in police matters and dictate action in situations in which discretion and flexibility are most important. In order for a court to grant an injunction, there should be a showing that there is a substantial risk that future violations will occur.

■■ In order to show a substantial likelihood of future conduct, a clear pattern of harassment must be shown.[12] Such a pattern should consist of frequent acts of misconduct by police officers, which acts were known to the superior officers of the police force. As we have seen from examining the Department's guidelines, there is no stated policy of inflicting searches which, when tested, are unlawful. Likewise, there are no factual allegations that, if proven, would show the existence of an unwritten policy of inflicting unlawful searches. The District Court, therefore, properly dismissed appellant's plea for injunctive relief without an evidentiary hearing.

Appellant relies heavily on this court's decision in Gomez v. Layton,[13] in his request for an evidentiary hearing. This reliance is misdirected. In *Gomez* the

11. For a general discussion of the court's power to enjoin police activity see Note, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale L.J. 143 (1968).

12. The need to establish more than an isolated instance of police harassment has been recognized in a decision by the Fourth Circuit. In Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966) (en banc), the court permitted a preliminary injunction in a situation in which police officers had established a policy of making unconstitutional searches with the acquiescence of the Police Commissioner.

Over three hundred such searches had been made within a 19-day period by a special squad authorized by the Police Commissioner. In that decision the court carefully distinguished the situation from one in which there were only isolated incidents of alleged harassment.

These raids were not isolated instances undertaken by individual police officers. They were rather the effectuation of a plan conceived by high ranking officials.

364 F.2d at 202.

13. 129 U.S.App.D.C. 289, 394 F.2d 764 (1968).

injunction was sought against the enforcement of a statute claimed to be regularly applied by the Police Department as a part of its day-to-day operations. Here there is no stated or written policy that is being attacked as unlawful. In the instant case the complaint is of a single nonrecurring instance of alleged harassment by police officers. *Gomez* and the instant case are therefore entirely different. In the former there was an official, publicly adopted policy that was under attack. There was no question that the procedures objected to occurred regularly and would occur again in the future. It was therefore unnecessary to allege more than a single application of the practice in order to maintain an action for an injunction.

### III. *Appellant's Right to Submit Interrogatories Regarding Activities in Which Appellant Was Not Involved*

Appellant filed a set of interrogatories seeking not only information concerning the incident in which he was involved, but also detailed information concerning other arrests, stops, frisks, interrogations, and other detentions of various unidentified persons. Appellant contends that he has a right to submit such interrogatories because he is maintaining a class action on behalf of all the unidentified persons who have been subjected to such detentions. This might be true if appellant were maintaining a valid class action on behalf of these unnamed individuals, but this is not the case.

 Appellant is not a member of the class of people who have been subjected to police action based upon the two statutes sought to be declared unconstitutional. Likewise, we have denied appellant's argument that he is entitled to injunctive relief against police practices that allegedly violate the *Terry*

stop-and-frisk guidelines. If one may not maintain an action on his own behalf, it follows perforce that he cannot pursue the action on behalf of another. There was no maintainable allegation of police misconduct concerning any other individual. Appellees were not obligated, therefore, to answer the interrogatories realting to persons other than appellant.

### IV. *Summary*

 Stripped of the pleas for injunctive and declaratory relief, all that remains of this case is a plea for damages resulting from the alleged unlawful search and detention of appellant. The trial court found that if upon trial a jury had returned a verdict in excess of $10,000, such an award would have been excessive. Since a simple tort action for less than $10,000 will not support the jurisdiction of a federal court, the trial judge ordered the case removed to the then District Court of Columbia Court of General Sessions. It is within the discretion of the District Judge to make such a finding.[14] We do not think that the District Judge abused that discretion in this instance.

In essence, our decision means that appellant may not enjoin the police from repeating the practices he was subjected to at the jewelry store. The Department's stated official policy is not unlawful on its face and the allegation of a single unlawful frisk does not indicate that future unlawful acts would be probable. No injunction, therefore, could be issued. This does not mean, however, that the officers' conduct in this isolated incident was necessarily lawful. Proof will be necessary to resolve this question. Appellant is free to pursue his remedy at law against the officers involved, the Department and the District of Columbia.[15]

14. *See* United Electrical, Radio and Machine Workers v. General Electric Co., 97 U.S.App.D.C. 306, 231 F.2d 258 (1956). For a general discussion of a trial court's power to dismiss an action for lack of jurisdictional amount, see Wright, Federal Courts § 33 (1970).

15. Appellant's belief that he has suffered any damage appears somewhat weak, if it is considered that he has made no claim against the jewelry store or its personnel, who purportedly were responsible for calling the police and whose adequacy of motivation has not been put in issue by appellant.

## V. Conclusion

For the reasons discussed above the action of the District Court in refusing to convene a three-judge District Court, refusing to permit an evidentiary hearing on appellant's right to injunctive relief, and denying appellant's right to submit interrogatories concerning searches and detentions of third parties is

Affirmed.

J. SKELLY WRIGHT, Circuit Judge, concurring:

I join parts I and IV of Judge Wilkey's opinion. I also agree that Long's request for an injunction should have been dismissed without an evidentiary hearing. Likewise, his request for interrogatories to uncover detailed information concerning current stop-and-frisk practices was properly denied. My agreement with the majority, however, should not be interpreted as a disinclination to authorize equitable relief against a clearly alleged and proven pattern of police illegality. Injunctive relief against Fourth Amendment violations is appropriate upon proof that such violations have occurred repeatedly and may well continue. See Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966); Gomez v. Wilson, 323 F.Supp. 87 (D.D.C.1971). The security of our citizens from official lawlessness, with its corrosive effect on private citizens' self-discipline and respect for government, demands no less. But such relief must not be granted lightly, for unduly obtrusive or hasty judicial intervention can undermine the important values of police self-restraint and self-respect.

As I read it, however, the complaint for injunctive relief is insufficient to warrant further judicial action at this time. First, it lacks any specific suggestion that the police's alleged refusal to conform its "stop and frisk" policy to the Fourth Amendment's restraints is sufficiently pervasive to warrant relief.[1] Apart from the plaintiff's own unrepeated encounter, no actual incidents of police illegality are alleged. Apart from his vague allegations, Long provides no specific facts suggesting that either he or anyone else has actually been victimized by police illegality in employing the stop and frisk practice since February, 1969. Additional detail as to actual incidents, suggesting that the plaintiff was repeatedly victimized[2] or that members of a class were victims of a pervasive pattern or practice, would obviously present a wholly different case.

The letter written by Police Chief Layton after the February 1969 incident and maintaining the propriety of the questioned police action[3] does not alter my conclusion. Assuming that the original stop and frisk was unlawful, it seems to me that the letter's endorsement of the police action in question was superseded by regulations issued later the same year.[4] Those guidelines, as I read them, emphasize that the "reasonable suspicion" standard for an investigative stop must be based on "specific facts"[5] and can be read as disapproving police detention of any citizen upon merely the unelaborated "suspicion" of another citizen. Thus, I have difficulty believing that the plaintiff is realistically threatened by a repetition of the 1969 incident.

1. Compare Lankford v. Gelston, 364 F.2d 197, 201 (4th Cir. 1966) with Peek v. Mitchell, 419 F.2d 575, 579 (6th Cir. 1970) and Carter v. Chief of Police, 437 F.2d 413, 415 (3rd Cir. 1971) See generally, Note, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale L.J. 143, 151–52 n. 35 (1968).

2. See, e. g., Gomez v. Layton, 129 U.S. App.D.C. 289, 291, 394 F.2d 794, 796 (1968).

3. Joint Appendix at 11–12.

4. Id. at 13–21. The guidelines were issued on August 27, 1969, two months after Long's attorney received Chief of Police Layton's letter.

5. Id. at 15.

This is not to intimate that the current guidelines, which the plaintiff challenges as a class representative, are immune from constitutional challenge. But such a challenge requires a specific allegation that they are actually being applied, or a specific indication that Long or members of his class are threatened by them. Long's unfortunate encounter three years ago hardly indicates that the guidelines presently threaten him. Although the contours of Article III's case and controversy requirement are hardly sharp,[6] unspecified allegations of harm and a resultant chilling effect without more suggest a claim that is insufficiently concrete to invoke the District Court's jurisdiction. Relevant facts indicating a likelihood of past or impending unlawful action infringing on plaintiffs' interests must be pleaded.[7] *See* Lion Mfg. Corp. v. Kennedy, 117 U.S.App.D.C. 367, 373, 330 F.2d 833, 839 (1964); Boyle v. Landry, 401 U.S. 77, 81, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Lake Carriers' Association v. MacMullan, 406 U.S. 498, 507, 508, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). It was thus proper for the District Court to refuse to proceed with Long's request to serve interrogatories.

As both the District Court and Judge Wilkey note, Long is still free to maintain his individual complaint for damages in the Court of General Sessions. This action, as Judge Wilkey acknowledges, is anything but frivolous. Although the Supreme Court has failed to rule on the precise question, there is grave doubt whether a police officer may lawfully accost a citizen—the first step in a stop and frisk—on the basis of another citizen's mere suspicion unelaborated by any specific observations. Certainly, a telephone report of "suspicion," without more, does not amount to

"specific and articulable facts which, taken together with the rational inferences from the facts, reasonably warrant the intrusion." Gomez v. Wilson, 323 F.Supp. 87, 92 (D.D.C.1971). Likewise, police must show more than a mere hunch that the subject of investigation might be dangerous to justify a patdown frisk following the initial stop. *See* Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

As I read it, the Supreme Court's recent ruling in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), does not liberalize these restraints on police conduct. *Adams* dealt merely with the question whether stop and frisk could be based on the word of an informer as well as on firsthand police observation. *Compare* Terry v. Ohio, *supra*, 392 U.S. 5–6, 88 S.Ct. 1868 (1968). Although *Adams* answered this question affirmatively, it also stressed the specificity of the informer's tip and his prior contact with the police officer who subsequently carried out the stop and frisk with the informer apparently looking on. 40 U.S. L.Week at 4725. *See also* Williams v. Adams, 436 F.2d 30, 33 (2nd Cir. 1970). Thus, there is good reason to believe that the police's encounter with Long may rest on too thin a reed.

## SUPPLEMENTAL OPINION ON REHEARING

WILKEY, Circuit Judge:

Appellant has requested that our decision of 6 September 1972 in this case be reconsidered and has suggested that the case be reheard *en banc*. The first four grounds advanced by appellant in his petition for rehearing were fully dealt with in our original opinion and require

---

6. *See* Davis v. Ichord, 143 U.S.App.D.C. 183, 196, 442 F.2d 1207, 1220 (1970) (Leventhal, J., concurring).

7. For example, Long might have alleged in his complaint specific evidence of unlawful police stop and frisk practice by pointing to recent decisions in this jurisdiction suppressing evidence.

no further comment. As his fifth and final reason for reconsideration, appellant alleged that "[t]he Court erred in ruling that the damages aspect of this case was properly referred to the D. C. Court of General Sessions."

The trial court had originally ordered the damages count submitted to the Court of General Sessions because the amount in controversy was not sufficient to support federal jurisdiction. We affirmed this action in our original opinion, and do here, with a slight clarification in the phrasing of the opinion. Appellant now contends that this was error because the case was brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, which provides for jurisdiction in the District Court without regard to the amount in controversy.

█ It is indisputable that the two statutes provide for federal jurisdiction regardless of the amount in controversy,[1] and that Long did plead these two statutes in his original complaint. We do not, however, believe that we either should or must amend our opinion to the extent suggested—to do so would be both unwise and unnecessary.

Altering our initial disposition of the case at this time would reward appellant for his indifference and encourage judicial inefficiency. An examination of the transcript indicates that the District Judge thought Long's damages plea was based on a simple tort theory,[2] in which case the jurisdictional amount would have been $10,000. This misapprehension was repeated by the District Court in its memorandum and order:

Plaintiff's counsel stated that the plaintiff suffered no physical injury. And the record shows that he was only detained for a few moments. The Court is of the opinion that, if there were any judgment for unlawful arrest in this case it would not exceed $10,000.00. This case is, therefore, certified to the District of Columbia Court of General Sessions, pursuant to 11 D.C.Code, § 962 (1967).

This misapprehension was accepted and restated by the Government in its brief.[3] Despite all of these opportunities to correct this misapprehension, appellant made no attempt to disabuse the trial court, the opposing counsel, or this court of the misunderstanding until after our opinion had issued. To grant appellant's request at this point would encourage the piecemeal arguing of cases and would result in increased work for the court.

Our action here should not be taken as a statement that the District Court was correct when it transferred the damages issue to the Court of General Sessions. If the lower court's error had been pointed out, we would have of course corrected it on appeal. We deny appellant's request solely because he remained indifferent to an obvious misunderstanding and did nothing to correct the situation even though he was in a position to do so. To amend our decision as appellant suggests would place the burden of developing and perfecting a party's case on the judiciary rather than on the adversary parties.

We would be obligated to correct our opinion if it contained an erroneous statement of the law that might confuse future litigants. On the issue belatedly raised by appellant, however, our opinion is entirely correct. As our opinion now stands, it contains no language that would suggest to a future party that § 1983 was involved in the case.

1. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

2. In the colloquy between the trial judge and appellant's counsel (Record at 3–7) the trial judge repeatedly referred to the action as being essentially one for unlawful arrest.

3. Government's brief at 8.

We, like the District Court, dealt with the damages issue on the assumption that it was based on a simple tort theory and under this assumption our opinion is correct.

 Appellant's last minute plea might be stronger if our decision made it impossible for him to vindicate his rights under § 1983. State courts do, however, have concurrent jurisdiction over § 1983 civil actions,[4] and for our purposes the D.C. courts are the equivalent of a state system. Our decision will not prevent appellant from arguing his case under § 1983.

 Finally, it should be noted that we are clearly not *required* to take notice of appellant's argument at this time. He is not pointing out a jurisdictional *defect* but rather an affirmative argument in favor of jurisdiction. It is, of course, within the discretion of a court to ignore such claims if they are not timely made.

For the reasons given above, the petition for rehearing and suggestion for rehearing *en banc* is

Denied.

J. SKELLY WRIGHT, Circuit Judge, dissenting in part:

Since jurisdiction in this case is laid under 42 U.S.C. § 1983 (1970) and 28 U.S.C. § 1343 (1970), and no jurisdictional amount is required to sustain that jurisdiction in the District Court, *see* Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), I respectfully dissent from that part of the court's opinion which requires a transfer of this case to the Superior Court.

---

4. Congress has generally chosen to grant concurrent jurisdiction in private civil actions. If the statute contains no express provision to the contrary, such a grant of concurrent jurisdiction may be presumed. See Houston v. Moore, 18 U.S. (5 Wheat.) 1, 25-27, 5 L.Ed. 19 (1820).