**Leroy SAWYER, Petitioner,**

**v.**

**Walter E. CRAVEN, Respondent.**

**Civ. No. 70–2676.**

United States District Court,
C. D. California.

March 31, 1971.

Leroy Sawyer, in pro. per.

Evelle J. Younger, Atty. Gen., William E. James, Asst. Atty. Gen., Donald Oeser, Deputy Atty. Gen., Los Angeles, Cal., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

HAUK, District Judge.

Petitioner, a California State prisoner, incarcerated at Folsom Prison, Represa, California, was sentenced to the term prescribed by law, 5 years to life, on November 29, 1968, by the Superior Court of Los Angeles County following his conviction in a non-jury trial for violation of Penal Code, § 211 (Robbery). The conviction was affirmed by the Court of Appeal of the State of California, Second Appellate District, on February 25, 1970, and Petition for Hearing was denied by the California Supreme Court on April 22, 1970.

In seeking relief in this Court, Petitioner makes the following contentions:

(1) He was denied effective aid of counsel and did not receive a full and fair hearing because material facts concerning an illegal search and seizure and illegal lineup were not properly developed at the § 1538.5 hearing (Motion to Suppress) or at trial.

(2) The State used perjured testimony of a witness, and facts outside the record reveal that the State knew it to be false.

(3) The State's factual determination is not supported by the record, since the Appellate Opinion is not correct.

(4) The search at the time of arrest was illegal, and the facts were not adequately developed.

(5) A line-up was unfairly suggestive and improper. There was no ruling by the trial Court concerning the independent origin of the in-court identification, and therefore the Appellate Court could not make a correct decision.

At the preliminary hearing held July 19, 1968, Petitioner was represented jointly with a co-defendant by a Public Defender. Because of a conflict of interests, another attorney was appointed for this Petitioner on August 8, 1968 and he represented Petitioner throughout the Superior Court proceedings. Pursuant to stipulation, the trial was held on submission of the transcript of the Preliminary Hearing and additional testimony by the arresting officer, Captain Lindemulder, both at the 1538.5 hearing and at the subsequent trial which followed immediately after denial of the Motion to Suppress on November 4, 1968.

The evidence showed that Susan Howell, an employee of the Commercial Credit Plan, saw two men enter that place of business a few minutes before 12 on June 10, 1968. She heard "This is a hold-up," and looked back at the men. The Petitioner, whom she identified in Court, was holding a shotgun and pointing it into the office, while co-defendant Briggs was taking money from the cashier. The shotgun in evidence was identified as similar to the one she had seen, as was the money bag which was in evidence. She gave a general description to officers thereafter, and about 1:15 the same day a detective took her alone to a police car in front of the building. Three men were sitting in the back seat and she identified Petitioner and co-defendant Briggs.

Another employee, Samuel Fricklin, identified the exhibits of the money bag and a check as having been in the cashier's drawer. At the time of the incident, this witness was seated in his office and did not know what was going on until the Petitioner appeared at the door and said "This is a holdup." He also identified the Petitioner in Court. He was taken with other employees to confront three men at about 1:15. They were standing outside the police car at this time.

Captain Lindemulder, in full uniform, was driving a pick-up truck when his attention was attracted to a car making an erratic lane change. At that time, or shortly before, he had received information on the police radio that an armed robbery had just been committed in the vicinity. There was a general description given of the robbers, including clothing, and the fact that they were armed. He continued to follow the car, saw a resemblance to the described clothing, and also noticed that the man in the back appeared to be pushing or pulling something under the front seat.

While following, he twice tried to call the police station but received no answer. He noticed other erratic driving during the course of following the car, but at one point he lost sight of it while a train intervened. He picked it up shortly thereafter and saw the car with the suspects turn into a driveway and pull up behind a house at 12500 S. Wilmington. He immediately phoned for assistance from a nearby pay phone, then returned to that address. Within minutes, the car drove out with the three suspects, and he again followed. When the requested police car caught

up, the suspects' car was at once stopped, and the suspects were ordered out of the car.

In patting down one of the suspects the officer felt a solid lump in a pocket, which he thought might be a gun covered with a handkerchief. He removed a wad of money, and later found in the car other money, the total of which approximated that reported taken in the robbery broadcast. The money bag was found under the right front seat, and other exhibits including the identified gun and a shotgun shell, were found during a subsequent search of the car. The check identified by Mr. Fricklin was found in pieces in the weeds behind the place where the car had stopped, 12500 S. Wilmington.

The suspects were not immediately placed under arrest when the car was stopped, but were eventually taken into custody after the officer found the money and asked the ownership of the car. The officer also testified concerning his presence at the confrontation at 1:15 at the scene of the robbery, when the defendants, each with his hands handcuffed behind him, stood beside the police car and were asked to face in one direction, face forward, then face in the other direction, in the presence of the employees who witnessed the robbery.

After reviewing the Petition, the Response, the Traverse, the points and authorities presented by both parties, the unpublished opinion of the Court of Appeal, Second Appellate District, and various exhibits including Clerk's Transcript, Reporter's Transcript, Appellant's Opening Brief On Appeal, Petition for Hearing before the California Supreme Court, and the affidavit of the arresting police officer with his official field report, this Court is fully advised in the premises and orders that the Petition for Writ of Habeas Corpus be denied for the following reasons.

■ Although it is true, as Respondent alleges, that Petitioner did not raise the issue of effectiveness of counsel in the State Courts, it will neverthe-

less be discussed here. The general thrust of Petitioner's contentions concern the alleged illegality of arrest, subsequent search and seizure, and improper "line-up" or confrontation, with the addition that his counsel was ineffective because he did not make certain objections and because relief was not granted in the State courts. The record simply does not bear this out.

■ Petitioner argues that an independent evidentiary hearing in this Court is necessary under the authority of Selz v. State of California, 423 F.2d 702 (9th Cir. 1970), and in support thereof says that his State Court hearing was not "full, fair, and adequate," or that the "material facts were not adequately developed in the State Court hearing." *Id.* 703. We cannot agree with this contention.

Petitioner was indeed represented by efficient counsel who presented all possible facts brought to our attention in this Petition. At the preliminary hearing, it should be noted, as well as at the proceedings in Superior Court, counsel for his co-defendant made copious and strenuous objections concerning probable cause for the arrest and the subsequent confrontation. It is apparent from the record that the Judges in all proceedings considered all points raised to apply with equal force to all defendants.

In addition to many other objections, counsel at the preliminary hearing moved to strike the identification testimony, but the motion was denied (C.T. 19). In the § 1538.5 hearing, counsel argued strenuously about the admissibility of evidence and probable cause for arrest or even detention (R.T. 35–45). After denial of the Motion to Suppress, counsel examined Captain Lindemulder as his own witness concerning the subsequent confrontation (R.T. 45–50), and thereafter made a very extensive argument before the Court made its findings on the trial phase (R.T. 56–63). Clearly, the record shows that counsel met the standards set forth in Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir. 1962), and

was not "so incompetent or inefficient as to make the trial a farce or mockery of justice." Dalrymple v. Wilson, 366 F.2d 183, 185 (9th Cir. 1966); Wright v. Craven, 412 F.2d 915, 917 (9th Cir. 1969). As stated by our Ninth Circuit Court of Appeals, if Petitioner had any point of real substance which was lost by counsel's ineffectiveness, we cannot find it. Chavez v. Craven, 428 F.2d 185 (9th Cir. 1970).

■ The Appellate Court noted that the record did not show the original source of the report heard by Captain Lindemulder prior to stopping the suspects' car, but stated that no objection had been made below (Op. 15–16). It is obvious that the official procedures could easily have been established by calling witnesses to the robbery and then witness to the police procedure, and the failure to object to the missing link in the chain of broadcasting the police report is no proof of incompetence of counsel. Hill v. Nelson, 423 F.2d 167 (9th Cir. 1970); Bates v. Wilson, 385 F.2d 771 (9th Cir. 1967); Rivera v. United States, 318 F.2d 606, 608 (9th Cir. 1963).

■ Petitioner has apparently abandoned his original claim of perjured testimony, since he does not state with particularity any facts which constitute perjury, what the true facts were, or in what way the prosecution knew them to be false. Wright v. Dickson, 336 F.2d 878, 883 (9th Cir. 1964); Buchanan v. McGee, 290 F.2d 711 (9th Cir. 1961). Contrary to the allegations in the Petition, the transcript does not prove falsity in Captain Lindemulder's testimony at the preliminary hearing, which is fully consistent with his later testimony, nor does it indicate any facts outside the record which would impute such knowledge to the State (Pet. p. 4).

■ The facts showing probable cause both for the detention and the arrest are fully discussed and developed at the preliminary hearing (particularly at p. 52) and in the § 1538.5 hearing (R.T. 28–29). After a lengthy discussion, the Trial Court distinguished the cases cited by defense counsel, analyzed the evidence and held that the facts showed probable cause for the original detention and for the subsequent arrest (R.T. 35–44). The ruling to the same effect by the District Court of Appeal (Op. 17–21) correctly states the law. There may be probable cause to stop a vehicle for investigation which falls short of the probable cause needed for arrest. United States v. Fallis, 414 F.2d 772 (9th Cir. 1969). The brief, informal detention for inquiry was not an arrest, and violated no constitutional rights, but probable cause did arise from the observations of the officers thereafter. United States v. Jackson, 423 F.2d 506, 507–508 (9th Cir. 1970). The knowledge of the robbery, description of the clothing matching that of the suspects, finding a large sum of money while searching for a gun, were all factors satisfying the requirements established in the cases cited. Parenthetically, because of the officer's knowledge that the suspected robbers were armed, there can be no question of the validity of his pat-down search for weapons, Terry v. Ohio, 392 U.S. 1, 23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The final contention is that the confrontation with victims at the scene of the crime constituted a line-up without counsel, and that it was unnecessarily suggestive and improper, under the holding of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and also of Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). At the outset, it is clear that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. United States v. Wade, *supra*, 388 U.S. at 222, 87 S.Ct. 1926, 18 L.Ed. 2d 1149. Identification of a person who has committed a crime is of first-rate importance to the public. "To deprive the prosecution of this potential evidence by refusal to expose one's self to

observers who saw the person who committed the crime is a suppression of important evidence and a frustration of the effort to learn the truth." United States v. Parhms, 424 F.2d 152, 154 (9th Cir. 1970); Doss v. United States, 431 F.2d 601 (9th Cir. 1970).

■ The State Appellate Court Opinion has an excellent discussion of the *Wade-Gilbert* principles concerning in-the-field identification (op. p. 22–26). Bearing in mind the totality of circumstances surrounding the identification, as required by Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), we find that the proximity of time and location, the lack of coercion by police, and the descriptions given by the witnesses made the confrontation imminently fair. It cannot be said that it was so unnecessarily suggestive and conducive to irreparable mistaken identification that Petitioner was denied due process. Allen v. Rhay, 431 F.2d 1160 (9th Cir. 1970); Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

■ It also appears that the in-court identification was independent of the line-up (C.T. 13, 49), although that would only be necessary if the pre-trial confrontation were tainted. Plies v. United States, 431 F.2d 727 (9th Cir. 1970). And the record further shows that the various exhibits, the money bag, the shotgun and the check, were also identified so there was more than enough evidence to connect the Petitioner and his co-defendants. It is clear that if, arguendo, the confrontation was tainted, any error in admitting the testimony was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). A reversal of conviction is not necessary, nor need there be a rejection of in-court identification by a witness to whom the accused had been exhibited prior to trial if it is established that such evidence had an independent origin, or the error in admission was harmless or both. United States v. Phillips, 427 F.2d 1035, 1037 (9th Cir. 1970).

From the preceding analysis of Petitioner's contentions, it is apparent that there are no grounds or reasons of any kind to grant an evidentiary hearing or to support the issuance of a writ of habeas corpus. Petitioner is not entitled to any relief since he does not demonstrate that he is "in custody in violation of the Constitution or laws * * * of the United States." 28 U.S.C. § 2241(c)(3).

Therefore, it is hereby ordered that the Petition for Writ of Habeas Corpus be, and the same is denied.