Harvey L. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1095.

District of Columbia Court of Appeals.

Submitted Feb. 10, 1983.

Decided Nov. 23, 1983.

Michael Stern, Washington, D.C., was on the brief for appellant.

Stanley S. Harris, U.S. Atty., Washington, D.C., with whom Michael W. Farrell, E. Lawrence Barcella, and Anita J. Stephens, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, FERREN and BELSON, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant of one count of carrying a pistol without a license. D.C. Code § 22–3204 (1981). On appeal, he argues that the police obtained the evidence as the result of an unlawful *Terry* seizure and, as a consequence, that the trial court should have granted his motion to suppress. We agree and reverse.[1]

I.

According to the government's evidence, on October 31, 1974, at approximately 10:30 p.m., Officer Lonnie Turner and two other

---

1. In view of our disposition, we do not reach appellant's claim of ineffective assistance of counsel.

uniformed officers of the Metropolitan Police Department were returning from routine patrol on their motor scooters. They noticed a 1967 Cadillac parked on the corner of 8th and P Streets, N.W. with three men sitting inside. Officer Turner testified that the car aroused their suspicions because it had bad paint and body damage and thus was of a type that, in their experience, is often used in robberies. This area, moreover, was known for frequent holdups and robberies; and, although the officers were very familiar with the area, they did not recognize the car. Officer Turner further testified that, in his experience, robberies in this area often were committed by men working in groups of two or three. For these reasons the officers decided to circle back to investigate.[2]

While the officers were approaching, the driver of the Cadillac got out and walked slowly toward the rear of the car. Officer Turner called to him to "come here, police officer." Instead, the driver looked at the police, then back at the car, and ran to the door of a nearby row house, which was locked. The testimony is conflicting as to whether the police then called the driver to come back down the steps or physically retrieved him. In any event, at the officers' request the driver produced identification.

According to Officer Turner, the driver's behavior in fleeing as though "he had done something else wrong" aroused the officers' suspicions about the two men still seated in the car. One officer stayed with the driver to check his identification[3] while the other two approached the car and ordered both passengers, including appellant, to get out and show their identifications. As appellant left the car, he reached for a green bag that was directly to his left on the front seat. Fearing that the bag might contain weapons, Officer Turner took the bag and placed it on the hood of the car, out of appellant's reach.

As Officer Turner patted down the bag for weapons, appellant said, "Dump it on the hood." The officer said "Fine," and gave the bag to appellant. As appellant emptied it, Officer Turner saw four or five .38 caliber rounds of ammunition fall out. The officer asked appellant whether he had a gun, and appellant replied that he did not. When Officer Turner patted appellant down, however, he felt a hard object in the center low part of appellant's back. The officer reached under appellant's belt and removed a .38 caliber derringer pistol which contained two live rounds of ammunition. A full search yielded four more bullets in appellant's right front pocket. The police placed appellant under arrest.

Appellant moved to suppress the pistol and ammunition. After hearing testimony, the trial court concluded that the officers had acted reasonably in stopping and searching appellant, and denied the suppression motion.

## II.

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and succeeding cases have established that a police officer may stop a person for questioning, without probable cause to arrest, if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts," reasonably lead that officer to suspect that "criminal activity may be afoot." *Id.* at 21, 30, 88 S.Ct. at 1880, 1884. In the present case, the police officers saw three men sitting in an old, beat-up car strange to the neighborhood, at 10:30 p.m. in an area known for frequent robberies. They saw the driver get out and walk slowly to the rear of the car. At that point, Officer Turner commanded the driver to "come here, police officer."

---

**2.** The officer testified that although the car also was parked in violation of a traffic ordinance, this played no part in their decision to check out the car.

**3.** A computer check of the driver's identification turned up nothing of interest to the officers. A police check of the license plate revealed that the car had not been reported as stolen.

■ Although not every confrontation between a police officer and a citizen results in a Fourth Amendment "seizure," *id.* at 19 n. 16, 88 S.Ct. at 1879 n. 16; *see Florida v. Royer,* ——— U.S. ———, ——— ———, 103 S.Ct. 1319, 1323–1324, 75 L.Ed.2d 229 (1983); *Coleman v. United States,* 337 A.2d 767, 769 (D.C.1975), a seizure does occur whenever a police officer uses either a show of authority or physical force to compel—or attempt to compel—a person to halt, such that a reasonable person would believe he or she is not free to leave. *Terry, supra,* 392 U.S. at 16, 88 S.Ct. at 1877; *United States v. Wylie,* 186 U.S.App.D.C. 231, 237, 569 F.2d 62, 68 (1977). Under the circumstances here, the uniformed officer's command to the driver to halt—"come here, police officer"—was a Fourth Amendment seizure; in no way could the driver believe he was free to leave. *In re J.G.J.,* 388 A.2d 472, 474 (D.C.1978) (*Terry* seizure when officers stopped squad car by sidewalk where suspects were walking, and one officer got out of the car and showed his badge and identification card to them); *Crowder v. United States,* 379 A.2d 1183, 1185 (D.C. 1977) (per curiam) (*Terry* seizure when three officers alighted from two squad cars near suspect and demanded his identification); *see United States v. Morrison,* 546 F.2d 319, 320 (9th Cir.1976) (per curiam) ("The seizure occurs when the officer first communicates the command to halt"); *see generally Royer, supra,* ——— U.S. at ———, 103 S.Ct. at 1323–1324 (although "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street … [or] by asking him if he is willing to answer some questions," or by identifying themselves as police officers *"without more,"* the person approached "may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds") (emphasis added).[4]

Instead of stopping, the driver ran to a nearby row house. His flight was a new factor provoking a second round of *Terry* seizures: the driver at the row house and appellant and the other passenger at the car. The question whether the police had a lawful basis to seize appellant accordingly turns on (1) whether the command to the driver—the first *Terry* seizure—was a lawful response to the situation, and, if not, (2) whether the driver's flight was a legitimate additional factor for the police to consider in seizing appellant.

### A.

■ As to the first question, this court has held—and we reaffirm—that a situation in which persons unfamiliar to the police are parked in a car late at night in a high crime area does not, without more, present specific, articulable facts warranting suspicion of criminal activity, and thus does not justify a *Terry* seizure. *Jones v. United States,* 391 A.2d 1188, 1191 (D.C. 1978); *see Robinson v. United States,* 278 A.2d 458, 459 (D.C.1971); *United States v.*

---

4. Contrary to the suggestion of our dissenting colleague, we do not read existing precedent to leave doubt whether the initial encounter here amounted to a Fourth Amendment seizure. He cites only one case from this jurisdiction, *United States v. Burrell,* 286 A.2d 845, 846–47 (D.C. 1972), *post* at 1330, where this court held that no Fourth Amendment seizure occurred when an officer touched a suspect on the arm and said "Hold it, sir, could I speak with you a second?" Judge Pair, writing for a divided court, reasoned that because the officer used "a normal means of attracting a person's attention …. [and] merely communicated a desire to speak with [the suspect]," a reasonable person in the suspect's position would not understand the officer's conduct to constitute a restraint on his liberty. Although a reasonable person might feel free to refuse a police officer's polite request to talk, or to simply walk away from a tentative approach such as that involved in *Burrell,* we remain convinced that most citizens would not feel free to leave when confronted with a command from three oncoming officers, "Come here, police officer"—a call which obviously sought to detain appellant "without reasonable objective grounds for doing so." *Royer, supra,* ——— U.S. at ———, 103 S.Ct. at 1324. Similarly, *People v. King,* 72 Cal.App.3d 346, 139 Cal.Rptr. 926 (1977) (no Fourth Amendment seizure when officer called out to a suspect with whom he was familiar, "Danny, stop, I want to talk to you"), is factually distinguishable from the present case.

*Beck,* 602 F.2d 726, 729 (5th Cir.1979). The police had no legitimate basis for attempting to compel the driver to "come here." Thus, unless the flight evidence is usable here against appellant, the government's case supporting a *Terry* seizure will fall short.[5]

B.

If we assume that the driver's flight, when added to the other factors arousing suspicion, would be enough to justify a *Terry* seizure, *see Stephenson v. United States,* 296 A.2d 606 (D.C.1972), *cert. denied,* 411 U.S. 907, 93 S.Ct. 1535, 36 L.Ed.2d 197 (1973); note 5 *supra,* and if we further assume that this suspicion of criminal activity properly extended to the two passengers (including appellant) in the car, there is still a critical question: whether the driver's flight was caused by the unlawful stop, and thus was the "'fruit' of official illegality," *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963),[6] or instead was wholly voluntary and thus "purged" of the taint. *Id.,* at 488, 83 S.Ct. at 417; *Beck, supra,* 602 F.2d at 729.

██ We conclude that the flight was unlawfully provoked. While it may be true that, under some circumstances, a voluntary response to an unlawful seizure can remove its taint, that response "must be truly voluntary and not merely the product of police misconduct." *Beck, supra,* 602 F.2d at 729–30. In the government's favor here is the fact that there is no record basis for con-cluding that the police, in calling to the driver to stop, actually intended him to flee. Moreover, it is true that the driver performed a volitional act, electing to run rather than comply with the unlawful order. There is, however, no record basis for concluding that the driver had begun to flee merely upon seeing the police, or for some other reason would have run without the order by the police to "come here." The police command provoked the driver's flight and thus for Fourth Amendment purposes unlawfully caused it. That flight, therefore, was the "'fruit' of official illegality." *Wong Sun, supra,* 371 U.S. at 485, 83 S.Ct. at 416. It cannot be used to rehabilitate the unwarranted police conduct—*i.e.,* retroactively cure the illegal seizure—and thus create the critical mass of circumstances necessary to justify the subsequent apprehensions of the driver and the passengers (including appellant). *Morrison, supra,* 546 F.2d at 320 ("[t]he command [to halt] must be valid when given; its character is not changed by the motorist's response, any more than probable cause for a search can be established by what the search discloses"); *see Beck, supra,* 602 F.2d at 729–30 (suspect's abandonment of contraband after illegal seizure "must be truly voluntary and not merely the product of police misconduct").[7]

III.

Lacking specific, articulable facts, including rational inferences, warranting suspi-

---

5. The prosecutor at the suppression hearing, as well as the trial court itself in ruling on the suppression motion, stressed the importance of the flight factor, implying consciousness of guilt, in justifying seizure of the three suspects. On appeal, moreover, the government does not attempt to justify what happened without the flight evidence. According to the government's brief: "In the instant case, Officer Turner had specific and articulable facts—the condition of the car, the time of the night, the strangeness of the car to the area, *the act of the driver in bolting when the police approached,* and the fact that the neighborhood was a high crime area known for holdups—which were not just 'marginally suspicious' but when put together constituted the articulable suspicion required under *Terry* to justify detaining the occupants for further questioning." (Emphasis added.)

6. *Wong Sun v. United States, supra,* held that the exclusionary rule bars evidence obtained either during or as a direct result of a violation of Fourth Amendment rights.

7. *But see United States v. Garcia,* 516 F.2d 318 (9th Cir.1975) (court upheld arrest where probable cause was based in part on voluntary flight after appellant had first acceded to a stop at a stationary border checkpoint, which the court assumed to be illegal, and then drove off from the detention area at 70 m.p.h.; court distinguished *Morrison, supra,* on attenuation grounds).

cion of criminal activity before the driver's flight, the police had no legitimate basis for seizing the driver, let alone the passengers of the car. The trial court, therefore, should have granted appellant's motion to suppress evidentiary use of the pistol and ammunition that the officer seized incident to appellant's unlawful detention and subsequent arrest.[8]

*Reversed.*

BELSON, Associate Judge, dissenting:

The majority reverses appellant's conviction on a ground which appellant raised neither in the trial court nor on appeal. When counsel for the United States read the majority opinion, they will learn for the first time of the argument that the seizure of appellant's person and the subsequent seizure of the weapon he carried were illegal because, a short time before that seizure, an officer had improperly seized one of appellant's companions by saying "come here, police officer."

As the majority opinion explains, after three officers drove past what they deemed to be a suspicious-looking car parked in a high crime district with three men sitting inside, they turned back to investigate further. As they approached, the driver got out and started to walk toward the rear of the car. One of the officers said "come here, police officer," whereupon the man suddenly ran to the front entrance of a nearby house. After he tried unsuccessfully to gain entry to the house, the police in some manner secured his return to the car. Shortly thereafter, there was a *Terry* seizure of appellant, who had remained in the car. *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). That seizure led to the confiscation of a gun he had on his person.

At no time did appellant's trial counsel or his appellate counsel argue that the initial seizure of the driver was illegal and that the driver's reaction to it therefore could not serve as part of the basis for a subsequent *Terry* seizure of appellant. The majority interjects and undertakes to answer the difficult legal question which the government has not had the opportunity to argue, *viz.*, whether the officer's statement to the driver amounted to a seizure of the driver. If that issue had been properly raised on an adequate record, the relevant cases demonstrate that the result would have been by no means a foregone conclusion.

The majority opinion states that the police officer statement "plainly is" a *Terry* seizure, and that we must overlook the "analytic oversight" of counsel and the trial court in order to prevent manifest miscarriage of justice. (Majority opinion at p. 1329, n. 8.) To the contrary, opinions of the Supreme Court in this area suggest that

**8.** Our dissenting colleague argues that the question of the legality of the police command to the driver to "come here," with its provocation of the flight implying consciousness of guilt, is not before us because defense counsel at the suppression hearing and on appeal have not isolated that show of police authority for separate treatment. Thus, he would only have the court consider the suppression ruling on the basis of factors including the flight. We disagree. By the suppression motion, counsel did present the question whether *Terry* and succeeding cases justified the seizure here. The trial court, as a matter of law, could not have upheld the first *Terry* seizure on this record and thus, in relying on the driver's flight, committed plain error warranting reversal.

We are not obliged to visit counsel's and the court's analytic oversight on appellant when a fundamental constitutional right is at stake.

There are limits on how far an appellate court can go in ignoring what counsel and the court have failed to see on a clear record. Contrary to our colleague, we perceive no basis for waffling on whether a command by a uniformed officer to "come here, police officer" is a *Terry* seizure. It plainly is. To prevent a manifest miscarriage of justice, we should say so. *United States v. Pepe*, 512 F.2d 1135, 1136–37 (3d Cir.1975) ("Appellate courts may notice errors apparent on the face of the record, but not argued by either party, in order to prevent a manifest miscarriage of justice"); *United States v. Musquiz*, 445 F.2d 963, 966 (5th Cir. 1971) ("We notice error on our own motion, as we think we are required to do when the error is so obvious that failure to notice it would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'") (citation omitted).

the seizure issue is not so simple. "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry, supra,* 392 U.S. at 34, 88 S.Ct. at 1886 (White, J., concurring). "Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." *Florida v. Royer,* —— U.S. ——, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983), citing *United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). A finding that the officer's statement was no more than the initiation of a permissible encounter between police and citizen and did not amount to a seizure was, in my view, not precluded by *Terry, Mendenhall* and *Royer.*

A review of pertinent authorities supports that conclusion. We have upheld the action of a police officer in touching a citizen's elbow and saying, "Hold it, sir, could I speak with you a second?" where he did not yet have grounds for a seizure. *United States v. Burrell,* 286 A.2d 845, 846–47 (D.C. 1972). The citizen's resulting statement about a gun led to his arrest and conviction. An appellate court of another jurisdiction has refused to suppress where police initiated contact, before having grounds to seize, with the statement, "Danny, stop, I want to talk to you." *People v. King,* 72 Cal.App.3d 346, 348–50, 139 Cal.Rptr. 926, 926–27 (Cal. Ct.App.1977); *see also United States ex rel. Frasier v. Henderson,* 464 F.2d 260, 263 (2d Cir.1972); *People v. Jordan,* 43 Ill.App.3d 660, 662–63, 2 Ill.Dec. 182, 184, 357 N.E.2d 159, 161 (Ill.App.Ct.1976).

There have been, on the other hand, cases in this jurisdiction where the trial court's assessment of the facts led it to conclude that under the law there had been a seizure. In *In re J.G.J.,* 388 A.2d 472, 474 (D.C.1978), the trial court considered a purported *Terry* seizure in which officers halted their patrol car near a sidewalk where the suspects were walking, and one officer exited and showed his badge and identification to the

suspects. There, we held the trial court not plainly wrong in holding that the officer had effected a seizure, but we went on to reverse the trial court's order of suppression on the basis of our holding that the officers had an articulable suspicion upon which to base the seizure. In *Crowder v. United States,* 379 A.2d 1183 (D.C.1977), a suspect was standing on a sidewalk when three officers alighted from two squad cars near him and one of the officers demanded his identification. We determined that this show of authority was sufficient to restrain appellant's liberty and so amounted to a *Terry* seizure.[1]

It is far from obvious where the instant case would have fit among our precedents if the appellant had asserted that an illegal seizure of the driver had occurred. That issue would have been a proper subject for appellate argument had the underlying fact issues been fully developed and determined in the trial court and had the matter been raised on appeal. That, however, is not what happened. Appellant did not raise the issue in the trial court. As a result, the government did not concentrate on the point in making a fact record and the trial judge did not address it specifically in making his findings of fact and conclusions of law at the suppression hearing. These omissions are crucial, since it is clear that the precise wording used by the officer in addressing the suspect, the officer's tone of voice, his demeanor, and all other relevant circumstances must be taken into consideration by the trial judge in determining whether what transpired between the officer and the driver amounted to a seizure. *See Gomez v. Turner,* 217 U.S.App.D.C. 281, 291, 672 F.2d 134, 144 (1982).

Although the trial judge made no specific findings on those crucial matters, he made the broad finding that the police conduct was reasonable. On this record, with the propriety of the stop of the driver not questioned, it cannot be said that the trial

---

1. We went on to hold that the seizure was reasonable under the circumstances. It was not clear whether the trial court had held that there had been no seizure, or that the seizure was reasonable.

court's finding of reasonable police conduct was plainly wrong or not supported by the record, nor did the trial judge commit legal error. D.C.Code § 17–305(a) (1981). The record here falls far short of providing the basis for a conclusion that the commission of plain error jeopardized the very fairness of the proceeding, *Johnson v. United States*, 387 A.2d 1084, 1089 (D.C.1978) (en banc). I would affirm.