726 A.2d 1233 (1999)
In re D.T.B., Appellant.
No. 96-FS-914.
District of Columbia Court of Appeals.
Argued January 5, 1999.
Decided March 11, 1999.
*1234 Jennifer Mackay Pyle, with whom James Klein and Gretchen Franklin, Public Defender Service, were on the brief, for appellant.
Sidney R. Bixler, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Director, Policy and Appeals Branch, were on the brief, for appellee.
Before WAGNER, Chief Judge, and REID, Associate Judge, and MACK, Senior Judge.
MACK, Senior Judge:
Appellant entered a conditional guilty plea to firearm offenses pursuant to Super.Ct.Juv.R. 11(a)(2). On appeal, he argues that police obtained the evidence used against him as a result of an unlawful Terry seizure[1] and that, therefore, the evidence should have been suppressed. We agree and reverse.

I.
At approximately 1:30 a.m., on October 15, 1995, Officer Leo Cannon was patrolling the 1500 block of 7th Street, N.W. From the street, the officer looked inside an open, well-lit, 24-hour laundromat where he saw washers and dryers, video game machines, a change machine, and four or five people. He observed appellant, the youngest of the people, "fidgeting" with his waist area. The officer did not notice any bulge or other facts consistent with the concealment of a firearm; nonetheless, he entered the laundromat and, while standing near the building's only exit in full uniform (with his service firearm at his waist), ordered appellant (then eighteen years old) to "come here." Appellant protested, explaining that he was only attempting to obtain change for a twenty dollar bill (which he was holding in his right hand) from *1235 a change machine. Officer Cannon, undaunted, again stated his request, this time in an even more stern and commanding tone. There being no other means to exit the laundromat or otherwise avoid the police officer, appellant reluctantly approached Officer Cannon. The officer testified that appellant was walking in a manner consistent with the concealment of a weapon; he therefore escorted appellant outside the building and frisked him. When the officer found a concealed weapon in appellant's waistband, appellant was arrested.
Prior to trial, appellant filed a motion to suppress tangible evidence, arguing Officer Cannon violated his Fourth Amendment freedom from an unauthorized search and seizure. A hearing on appellant's motion was held on April 22, 1996. At that hearing, the trial court found that Officer Cannon did not have an articulable reasonable suspicion to detain appellant upon entering the laundromat. The trial court found as a matter of fact that the officer's greeting was a command rather than a salutation. The court went on to conclude, however, that the stern commanding tone employed by Officer Cannon when he twice ordered appellant to "come here" did not constitute a detention. According to the trial court, appellant was not detained until he was frisked outside the laundromat and, by that time, the officer had sufficient justification for the stop and search. Appellant entered a conditional guilty plea and this appeal followed.

II.
We begin our analysis of appellant's Fourth Amendment claim by considering first when Officer Cannon's actions constituted a seizure. The government contends Officer Cannon's actions did not amount to a seizure until outside the laundromat when the frisk occurred. Appellant contends that, to the contrary, he was seized while still inside the laundromat by the commanding tone of Officer Cannon's voice.
A "seizure" arises "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Of course, every police investigation involving contact between an officer and a citizen does not amount to a seizure. Terry v. Ohio, supra note 1, 392 U.S. at 19 n. 16, 88 S.Ct. 1868. Rather, a seizure occurs where a show of authority or actual force by an officer would lead a reasonable person to conclude he was not free to leave. In re J.M., 619 A.2d 497, 500 (D.C.1992) (en banc); Johnson v. United States, 468 A.2d 1325, 1327 (D.C.1983). Thus, we must decide when Officer Cannon exerted a sufficient show of authority such that a reasonable person would have felt that he was not free to leave.
The government relies heavily upon Richardson v. United States, 520 A.2d 692 (D.C.), cert. denied, 484 U.S. 917, 108 S.Ct. 267, 98 L.Ed.2d 224 (1987), in support of its argument that a seizure did not arise until outside the laundromat. In Richardson, plain clothes officers in an unmarked car observed Richardson exit a known drug location holding a small white object and looking nervous. The officers exited their vehicle and called out "Police, wait a second. We want to talk to you." We concluded that the officers' request for Richardson to "wait" did not amount to a seizure. By analogy, the government argues Officer Cannon's statement, "come here," did not amount to a seizure inside the laundromat.
We find this case to be factually distinguishable from Richardson and conclude that a seizure occurred while appellant was still within the laundromat. In Richardson, we expressly relied, in part, upon the fact that there was no indication that the "officers used threatening language or a commanding tone." Id. at 697. In the instant case, our decision is guided by the often cited Mendenhall factors opined by the Supreme Court:
Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *1236 Mendenhall, supra, 446 U.S. at 554, 100 S.Ct. 1870 (citations omitted; emphasis added).
Applying these factors to the case at bar, of particular relevance is the trial court's finding that Officer Cannon's statement was "undoubtably stern" and probably amounted to a command. See Ware v. United States, 672 A.2d 557, 561 (D.C.1996) (commanding appellant off of his bicycle was a Fourth Amendment seizure); see also Johnson, supra, 468 A.2d at 1328 (command to halt "come here"was a Fourth Amendment seizure). Also important is the fact that appellant was in an enclosed area with Officer Cannon standing next to the only exit. See, e.g., United States v. Pavelski, 789 F.2d 485, 488 (7th Cir.), cert. denied, 479 U.S. 917, 107 S.Ct. 322, 93 L.Ed.2d 295 (1986) (police cars blocking Pavelski's exit amounted to a seizure). We believe that a reasonable person under these circumstancesconfronted with an armed, unformed police officer who, while blocking a building's only exit, commanded in an undoubtably stern voice twice to come herewould have believed that he was not free to leave. Accordingly, Officer Cannon's actions effectively seized appellant for Fourth Amendment purposes inside the laundromat.

III.
Having concluded that a seizure resulted inside the laundromat, we next consider whether such seizure was lawful.
The Fourth Amendment safeguards "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Law enforcement officials can only intrude upon this protection where there exists "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, supra note 1, 392 U.S. at 21, 88 S.Ct. 1868. When determining whether a Terry stop is legal, we look to the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
As to the lawfulness of appellant's seizure, the trial court found that Officer Cannon did not have "specific and articulable facts" warranting a seizure until appellant walked towards Cannon in a manner consistent with concealing a weapon. The government contends that, to the contrary, appellants "fidgeting" and nervousness were sufficient to warrant a seizure when Cannon entered the laundromat. We are unpersuaded and agree with the trial court's conclusion in this regard.
Appellant's nervousness upon seeing Officer Cannon, and his "fidgeting" prior thereto, do not alone warrant a Terry stop. Cf. Smith v. United States, 558 A.2d 312 (D.C.1989) (en banc) (improper Terry stop where appellant, seen with two narcotics suspects in a high crime area, fled when undercover police arrived). Indeed, there is nothing suspicious about someone fidgeting with their waist area inside a laundromat. Appellant's explanationthat he was attempting to get changeand the production of a twenty dollar bill should have quelled any lingering suspicion on the part of Officer Cannon. The government is unable to demonstrate any further evidence which, when considered in totality with all the surrounding circumstances, might amount to a reasonable, articulable suspicion. Cf., e.g., Ware, supra, 672 A.2d at 557 (anonymous tip sufficiently corroborated justified seizure); Stephenson v. United States, 296 A.2d 606, 609-10 (D.C. 1972), cert. denied, 411 U.S. 907, 93 S.Ct. 1535, 36 L.Ed.2d 197 (1973) (evidence of flight may imply guilty conscious).
Reversed.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).